```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X
                                  :
                                  :
UNITED STATES OF AMERICA          :
                                  :    SEALED INDICTMENT
        - v. -                    :
                                  :    22 Cr.   (   )
SUNI MUNSHANI, and                :
SURESH MUNSHANI,                  :    22 CRIM 215
                                  :
                   Defendants.    :
                                  :
- - - - - - - - - - - - - - - - - X
```

COUNT ONE

(Conspiracy to Commit Wire Fraud:
Fraudulent Contractor and Fake Tax Liability Scheme)

The Grand Jury charges:

RELEVANT PERSONS AND ENTITIES

1.   At all times relevant to this Indictment, the Victim Company was a technology company headquartered in Stamford, Connecticut, which provided data security solutions to its clients.

2.   At all times relevant to this Indictment, SUNI MUNSHANI, the defendant, was a self-described technology entrepreneur. From in or about May 2011 up to and including in or about October 2019, MUNSHANI was the Chief Executive Officer ("CEO") of the Victim Company.

OVERVIEW OF FRAUDULENT CONTRACTOR AND FAKE TAX LIABILITY SCHEME

3.   Between in or about October 2011 and in or about October 2018, in the Southern District of New York and elsewhere,

SUNI MUNSHANI, the defendant, and his brother, SURESH MUNSHANI, the defendant, carried out a scheme to defraud the Victim Company of millions of dollars through fraudulent agreements with and money transfers to a purported third-party contractor ("Individual-1") and a company purportedly controlled by that third-party (the "Individual-1 Company") but in fact controlled by the defendants. To facilitate the scheme, SUNI MUNSHANI, among other things, created an email account purportedly controlled by Individual-1, but was in fact controlled by SUNI MUNSHANI. He then used that email account to correspond with the Victim Company concerning services purportedly rendered to the Victim Company by Individual-1 and by the Individual-1 Company. In fact, Individual-1 and the Individual-1 Company did not provide these services to the Victim Company. Nevertheless, SUNI MUNSHANI caused the Victim Company to pay at least approximately $3 million dollars in total to Individual-1 and the Individual-1 Company, which funds ultimately enriched SUNI MUNSHANI and SURESH MUNSHANI.

4.   In addition, in furtherance of the scheme, SUNI MUNSHANI, the defendant, caused the Victim Company to issue a check for an additional approximately $3.5 million, which he claimed related to a tax liability of the Victim Company. In fact, no such tax liability existed and SUNI MUNSHANI, with the assistance of SURESH MUNSHANI, the defendant, also stole this money from the Victim Company.

**SUNI MUNSHANI "NEGOTIATES" WITH INDIVIDUAL-1**

5. In or about October 2011, the Victim Company entered into an agreement with Individual-1 pursuant to which Individual-1 would, among other things, assist the Victim Company with "development of business partner relationships" (the "Individual-1 Agreement"). SUNI MUNSHANI, the defendant, "negotiated" the Individual-1 Agreement on behalf of the Victim Company, and under the agreement, Individual-1 would report directly to SUNI MUNSHANI.

6. In or about October 2014, the Victim Company entered into an agreement with the Individual-1 Company (the "Individual-1 Company Agreement"), pursuant to which the Individual-1 Company would perform "software development and software testing" for the Victim Company. As with the Individual-1 Agreement, SUNI MUNSHANI, the defendant, "negotiated" the "Individual-1 Company Agreement" on behalf of the Victim Company.

7. In negotiating the Individual-1 Agreement and the Individual-1 Company Agreement, and thereafter purportedly communicating with Individual-1 concerning, among other things, services purportedly rendered by Individual-1 and the Individual-1 Company, SUNI MUNSHANI, the defendant, used his Victim Company email account to communicate with an email account purportedly controlled by Individual-1 (the "Individual-1 Email Account") but in fact created and controlled by SUNI MUNSHANI.

### SUNI MUNSHANI CAUSES FRAUDULENT PAYMENTS TO INDIVIDUAL-1

8.      Neither Individual-1 nor the Individual-1 Company provided services to the Victim Company.  Nevertheless, SUNI MUNSHANI, the defendant, caused the Victim Company to pay Individual-1 and the Individual-1 Company a combined amount of approximately $3 million during the scheme.  Most of these funds were deposited into bank accounts created and controlled by SUNI MUNSHANI and SURESH MUNSHANI, the defendants.

9.      For example, between in or about March 2015 and in or about September 2018, SUNI MUNSHANI, the defendant, caused the Victim Company to issue at least four checks to the Individual-1 Company that were deposited into a bank account opened and controlled by SURESH MUNSHANI, the defendant, in Ontario, Canada (the "Individual-1 Company Canada Account").  Before the first such deposit, SURESH MUNSHANI added the name of the Individual-1 Company to the bank account, which account he had opened several years earlier in the name of another company.

10.     For each of the four checks, after the Victim Company's funds were deposited into the Individual-1 Company Canada Account, SURESH MUNSHANI, the defendant, transferred most of the funds to an account controlled by SUNI MUNSHANI, the defendant, and kept a portion of the proceeds for himself.  For example, in or about fall 2018, SURESH MUNSHANI transferred $24,000 for the benefit of SUNI MUNSHANI, and retained $6,000 of a $30,000

check issued by the Victim Company to the Individual-1 Company. More specifically:

    a. On or about September 13, 2018, the Victim Company issued a check for approximately $30,000 to the Individual-1 Company, which check was deposited into the Individual-1 Company Canada Account controlled by SURESH MUNSHANI.

    b. On or about October 9, 2018, SUNI MUNSHANI, using a personal email account, emailed a personal email account of SURESH MUNSHANI, stating, in substance and in part, "Made it 24K instead of 25.5 - this gives you an extra 1.5K - book your ticket. Best." On the same date, the Individual-1 Company Canada Account controlled by SURESH MUNSHANI wired $24,000 to a bank account controlled by SUNI MUNSHANI.

**SUNI MUNSHANI EMBEZZLES PURPORTED $3.5 MILLION TAX PAYMENT**

11. In furtherance of the scheme, SUNI MUNSHANI, the defendant, with the assistance of SURESH MUNSHANI, the defendant, stole an additional $3.5 million from the Victim Company, which amount SUNI MUNSHANI claimed was used to pay a tax liability of the Victim Company but in fact was used to enrich the defendants.

12. Thus, in or about May 2015, SUNI MUNSHANI, the defendant, claimed that the Victim Company had a $3.5 million tax liability and signed a handwritten check from the Victim Company to the Internal Revenue Service (the "IRS") for that amount, which check was never received by the IRS. Around the same time, SUNI

MUNSHANI caused the Victim Company to issue a $3.5 million check to the Victim Company for the purported liability (the "Typed Check"). SUNI MUNSHANI signed the Typed Check on behalf of the Victim Company.

13. On or about the same day that SUNI MUNSHANI, the defendant, caused the Victim Company to issue the Typed Check, SUNI MUNSHANI opened an unauthorized bank account in the name of the Victim Company (the "Unauthorized Victim Company Account"), representing to the bank, among other things, that he was the Victim Company's "President/Secretary," although he never held the position of Secretary.

14. On or about the same day, SUNI MUNSHANI, the defendant, deposited the Typed Check into the Unauthorized Victim Company Account. Thereafter, SUNI MUNSHANI, the defendant, transferred the stolen money to other bank accounts controlled by SUNI MUNSHANI and SURESH MUNSHANI, the defendant. For example:

    a. On or about August 24, 2015, SUNI MUNSHANI transferred $300,000 from the Unauthorized Victim Company Account to the Individual-1 Company Canada Account controlled by SURESH MUNSHANI. On or about the next day, the Individual-1 Company Canada Account wired approximately $274,990 to a bank account controlled by SUNI MUNSHANI.

b. On or about September 8, 2015, approximately $3 million was transferred from the Unauthorized Victim Company Account to a personal bank account of SUNI MUNSHANI.

**STATUTORY ALLEGATIONS**

15. From at least in or about October 2011, up to and including at least in or about October 2018, in the Southern District of New York and elsewhere, SUNI MUNSHANI and SURESH MUNSHANI, the defendants, and others known and unknown, willfully and knowingly, combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

16. It was a part and object of the conspiracy that SUNI MUNSHANI and SURESH MUNSHANI, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349.)

## COUNT TWO

(Conspiracy to Commit Wire Fraud: Development Company Scheme)

The Grand Jury further charges:

17. The allegations contained in paragraphs 1 through 2 of this Indictment are repeated and realleged as if fully set forth herein.

### OVERVIEW OF THE DEVELOPMENT COMPANY SCHEME

18. Between in or about February 2013 and in or about December 2019, in the Southern District of New York and elsewhere, SUNI MUNSHANI, the defendant, and others known and unknown, carried out a scheme to defraud the Victim Company of millions of dollars through services agreements between the Victim Company and a software development company (the "Development Company"). As part of the scheme, SUNI MUNSHANI, among other things, obtained an undisclosed ownership interest in the Development Company and used his personal email account to assist the CEO of the Development Company ("Co-Conspirator-1") in negotiating favorable terms in its contracts with the Victim Company, which terms ultimately enriched SUNI MUNSHANI.

### SUNI MUNSHANI "NEGOTIATES" WITH THE DEVELOPMENT COMPANY

19. By in or about February 2013, the Victim Company and the Development Company had begun negotiating a potential contractual relationship. Unbeknownst to the Victim Company, during these negotiations, SUNI MUNSHANI, the defendant, used his

personal email account to assist Co-Conspirator-1 and the Development Company. For example, on or about February 7, 2013, Co-Conspirator-1 sent an email to SUNI MUNSHANI's personal email account containing a draft of an email Co-Conspirator-1 planned to send to an Executive Vice President (the "EVP") at the Victim Company concerning the draft agreement between the Victim Company and the Development Company. Co-conspirator-1 wrote, in substance and in part, "Suni, Please see my response to [the EVP]. I believe we have covered all the items we discussed. . . . I have made some modifications. Would appreciate a review."

20. On or about June 1, 2013, the Victim Company entered into a services agreement (the "Services Agreement") with the Development Company, pursuant to which the Development Company would perform software development, testing, and support for the Victim Company. The Services Agreement was signed by the EVP on behalf of the Victim Company and by Co-Conspirator-1 on behalf of the Development Company. Among other terms, under the Services Agreement, the Development Company would receive a fee equal to 25 percent of operating expenses incurred by the Development Company in its performance under the contract (the "Management Fee").

### SUNI MUNSHANI OBTAINS OWNERSHIP INTEREST IN DEVELOPMENT COMPANY

21. In or about the same time that he was assisting Co-Conspirator-1 with Co-Conspirator-1's negotiations with the Victim Company, SUNI MUNSHANI, the defendant, was negotiating with Co-

Conspirator-1 and others, known and unknown, a 50 percent ownership interest for himself in the Development Company, which interest, at SUNI MUNSHANI's direction, was ultimately held in trusts in the names of family members of SUNI MUNSHANI.

22. SUNI MUNSHANI, the defendant, did not disclose his or his family's interest in the Development Company to the Victim Company before in or around his removal as CEO of the Victim Company in or around fall 2019.

### SUNI MUNSHANI AND CO-CONSPIRATOR-1 DOUBLE THE MANAGEMENT FEE

23. By in or about 2015, the Victim Company and the Development Company had begun negotiations concerning an amendment to the Services Agreement. As with the Services Agreement, unbeknownst to the Victim Company, SUNI MUNSHANI, the defendant, used his personal email account to assist Co-Conspirator-1 with the negotiations. Among other things, SUNI MUNSHANI and Co-Conspirator-1 conspired to increase the Management Fee paid by the Victim Company to the Development Company from 25 percent to 50 percent. Thus, on or about May 19, 2015, Co-Conspirator-1 sent an email to SUNI MUNSHANI's personal email account with the subject line "Email – LMK if this works." The contents of the email consisted of a draft email in which Co-Conspirator-1 wrote, in substance and in part, "I would appreciate if we can increase the management fee to 50% effective June 1st." SUNI MUNSHANI responded, in substance and in part, "Change - I would appreciate

to - as discussed we will increase effective June 1 the fee to 50%." Co-Conspirator-1 adopted SUNI MUNSHANI's proposed change and sent the updated email to SUNI MUNSHANI's Victim Company email address, writing, in substance and in part, "As discussed we will increase the management fee to 50% effective June 1st."

24.  On or about July 1, 2015, the Victim Company entered into the amendment to the services agreement (the "Amended Services Agreement") with the Development Company.  Unlike the Services Agreement, which had been signed by the EVP, the Amended Services Agreement was signed on behalf of the Victim Company by SUNI MUNSHANI, the defendant.  Under the amendment, the Management Fee was doubled, from 25 percent to 50 percent.

### SUNI MUNSHANI'S FINANCIAL BENEFIT

25.  Between in or around July 2016 and in or around 2019, the Victim Company paid the Development Company at least approximately $4.1 million.  During approximately the same period, the Development Company transferred, via wires and checks, at least approximately $2 million to a bank account for which SUNI MUNSHANI, the defendant, was the sole signatory.  SUNI MUNSHANI and Co-Conspirator-1 corresponded concerning such transfers.  For example, on or about June 28, 2017, Co-Conspirator-1 emailed SUNI MUNSHANI's personal email account, writing, in substance and in part, "Should be able to defend [the Development Company's] rates." SUNI MUNSHANI responded, in substance and in part, "Ok.  Now wire

me some money :)." Co-Conspirator-1 responded, in substance and in part, "LOL! Going out today." On or about the following day, a check for $40,815 issued by the Development Company was deposited in an account controlled by SUNI MUNSHANI.

### STATUTORY ALLEGATIONS

26. From at least in or about February 2013, up to and including at least in or about December 2019, in the Southern District of New York and elsewhere, SUNI MUNSHANI, the defendant, and others known and unknown, willfully and knowingly, combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

27. It was a part and object of the conspiracy that SUNI MUNSHANI, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349.)

## COUNT THREE

### (Conspiracy to Commit Wire Fraud: Licensing/Reseller Scheme)

The Grand Jury further charges:

28. The allegations contained in paragraphs 1 through 2 of this Indictment are repeated and realleged as if fully set forth herein.

### OVERVIEW OF THE LICENSING/RESELLER SCHEME

29. Between in or about December 2018 and in or about October 2020, in the Southern District of New York and elsewhere, SUNI MUNSHANI, the defendant, and others known and unknown, carried out a scheme to defraud the Victim Company through licensing and reseller agreements between the Victim Company and two other companies (the "Licensing Company" and the "Reseller Company," respectively). As part of the scheme, SUNI MUNSHANI, among other things, conspired with others to create the two companies and assisted the companies in their negotiations with the Victim Company, which negotiations ultimately enriched SUNI MUNSHANI.

### SUNI MUNSHANI STEERS POTENTIAL CLIENT TO THE LICENSING COMPANY

30. By in or about late 2018, the Victim Company had begun discussions with a potential client (the "Potential Client") about the Potential Client's possible purchase of services from the Victim Company.

31. In or about the same period and unbeknownst to the Victim Company, SUNI MUNSHANI, the defendant, with others known

and unknown, created the Licensing Company and assisted the Licensing Company in negotiating an agreement with the Victim Company. Accordingly:

    a. On or about December 30, 2018, SUNI MUNSHANI, the defendant, used his personal email account to instruct another individual to create an email account for another individual ("Co-Conspirator-2") that would include the name of the Licensing Company.

    b. On or about December 31, 2018, Co-Conspirator-2 used his newly created Licensing Company email account to send the Victim Company email account of SUNI MUNSHANI, the defendant, a markup of a licensing agreement between the Victim Company and the Licensing Company (the "Licensing Agreement"). On or about the same day, SUNI MUNSHANI, on behalf of the Victim Company, and Co-Conspirator-2, on behalf of the Licensing Company, signed the Licensing Agreement.

    c. On or about January 13, 2019, Co-Conspirator-2 sent an email to the personal email account of SUNI MUNSHANI, the defendant, which reflected incorporation of the Licensing Company in Delaware on or about January 11, 2019.

    32. During in or about the next several months, SUNI MUNSHANI, defendant, without disclosing his role in the Licensing Company, attempted to facilitate an approximately $6.7 million contract between the Potential Client and the Licensing Company

instead of directly with the Victim Company.

33. In or about March 2019, an employee of the Potential Client circulated by email a markup of a proposed agreement between the Potential Client and the Licensing Company. The recipients of the email included a Victim Company sales employee as well as an email account for SUNI MUNSHANI, the defendant, that included the name of the Licensing Company. SUNI MUNSHANI, using his personal email account, forwarded the email to, among others, Co-Conspirator-2, stating "Please make sure there is no [Licensing Company] email address for me." Co-Conspirator-2 responded with an email to SUNI MUNSHANI's personal email account, stating that Co-Conspirator-2 was "concerned about the email address snafu."

34. Ultimately, the agreement between the Licensing Company and the Potential Client was never completed.

### SUNI MUNSHANI "NEGOTIATES" AGREEMENT WITH THE RESELLER COMPANY

35. Around the same time as the above-described events concerning the Licensing Company, SUNI MUNSHANI, the defendant, was also surreptitiously working with Co-Conspirator-2 and others, known and unknown, to set-up the Reseller Company and use it to embezzle funds from the Victim Company.

36. In or about early February 2019, SUNI MUNSHANI, the defendant, using a personal email address, instructed Co-Conspirator-2, in substance and in part, to set up the Reseller Company "in the same way as [the Licensing Company]."

37. Around the same time, SUNI MUNSHANI, the defendant, using a personal email address, corresponded with Co-Conspirator-2 and others, known and unknown, concerning the Reseller Company's requested revisions to a proposed software reseller agreement between the Reseller Company and the Victim Company.

38. On or about February 15, 2019, SUNI MUNSHANI, the defendant, signed the agreement (the "Reseller Agreement") on behalf of the Victim Company. Under the Reseller Agreement, the Reseller Company received 40 percent of amounts received by the Victim Company on sales in Asia Pacific, the Middle East, and Africa. Although signed on or about February 15, 2019, the effective date of the Reseller Agreement was November 1, 2018.

39. Thereafter, SUNI MUNSHANI, the defendant, assisted Co-Conspirator-2 with the creation and submission of invoices from the Reseller Company to the Victim Company, which invoices, among other things, billed the Victim Company for software sales to companies that were identified as potential customers by the Victim Company before the Reseller Company existed.

### SUNI MUNSHANI'S FINANCIAL BENEFIT

40. Between in or about February 2019 and in or about October 2019, the Victim Company paid the Reseller Company at least approximately $531,000. Between in or about July 2019 and in or about October 2020, the Reseller Company transferred, via wire, at least approximately $200,000 to bank accounts for which SUNI

MUNSHANI, the defendant, was the sole signatory.

## STATUTORY ALLEGATIONS

41. From at least in or about December 2018, up to and including at least in or about October 2020, in the Southern District of New York and elsewhere, SUNI MUNSHANI, the defendant, and others known and unknown, willfully and knowingly, combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

42. It was a part and object of the conspiracy that SUNI MUNSHANI, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349.)

## FORFEITURE ALLEGATIONS

43. As a result of committing the offense charged in Count One of this Indictment, SUNI MUNSHANI and SURESH MUNSHANI, the defendants, shall forfeit to the United States, pursuant to

Title 18, United States Code, Section 981(a)(1) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense and the following specific property:

      a.    157 Easton Road, Westport, Connecticut;

      b.    20 Redding Road, Easton, Connecticut; and

      c.    A 2016 BMW Model M4 automobile, with Vehicle Identification Number WBS3U9C55GP969378.

44.  As a result of committing the offenses charged in Counts Two and Three of this Indictment, SUNI MUNSHANI, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses and the following specific property:

      a.    157 Easton Road, Westport, Connecticut;

      b.    20 Redding Road, Easton, Connecticut; and

   c. A 2016 BMW Model M4 automobile, with Vehicle Identification Number WBS3U9C55GP969378.

### Substitute Assets Provision

  45. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third person;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

   (Title 18, United States Code, Section 981;
  Title 21, United States Code, Section 853; and
   Title 28, United States Code, Section 2461.)

_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

SUNI MUNSHANI, and
SURESH MUNSHANI,

Defendants.

<u>SEALED INDICTMENT</u>

22 Cr.     (  )

(18 U.S.C. § 1349.)

DAMIAN WILLIAMS
United States Attorney.

**A TRUE BILL**

Foreperson.

Sealed Indictment, True Bill + Arrest Warrant filed 4/11/22 Before OTW