

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 3, 2023

**BY ECF**

The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Suresh Munshani*, **S2 22 Cr. 215 (JSR)**

Dear Judge Rakoff:

    The Government respectfully submits this letter in advance of the sentencing of Suresh Munshani (the "defendant") on May 10, 2023. Over the course of at least three years, the defendant conspired with his brother to steal and launder $860,000 from a data security company (the "Victim Company") that had entrusted the defendant's brother to serve as its Chief Executive Officer ("CEO"). The sentencing range under the United States Sentencing Guidelines (the "Guidelines") for the defendant's criminal conduct is 57 to 71 months' imprisonment. The Probation Office recommends a sentence of 12 months and one day. In light of the defendant's lack of criminal history and his role in the fraudulent scheme, the Government believes that a sentence of not less than 30 months' imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing.[1]

**A.    Background**

    **1.    Offense and Relevant Conduct**

    Between 2011 and 2019, the defendant's brother and co-conspirator was the CEO of the Victim Company, which provided data security services to its clients. (Presentence Investigation Report ("PSR") ¶ 9). Within six months of his appointment as CEO and continuing until his separation from the company about eight years later, the defendant's brother and his co-conspirators used the Victim Company to fraudulently enrich themselves. (PSR ¶ 9). The defendant was directly involved in a fraudulent scheme resulting in the theft of $860,000 from the Victim Company, of which the defendant kept $150,000. (PSR ¶ 21).

---

[1] The Government attaches as Exhibit A a proposed order of restitution and as Exhibit B a proposed order of forfeiture.

The defendant's brother used his deceased uncle's identity to steal millions through fraudulent payments to a fake contractor and for a purported tax liability. (*See* PSR ¶¶ 11-17). To execute this fraudulent scheme, the defendant's brother created an email account in the name of his deceased uncle, Chandru Badlani, and then used that account to cause the Victim Company to enter into fraudulent contracts with a company that was purportedly controlled by Badlani (called "CLB Associates" or "CBL Associates"), but in fact was a fiction devised by the defendant's brother.[2] (*See* PSR ¶¶ 11-13). The defendant's brother, posing as Badlani, wrote over 50 emails from the fraudulent email account to Victim Company email accounts, the vast majority of which he wrote to his own work email account. In the emails, the defendant's brother, among other things, "negotiated" the fraudulent contracts with himself and submitted invoices to the Victim Company for services that were never provided. (*See* PSR ¶¶ 12-13).

Between 2011 and 2018, the defendant's brother caused the Victim Company to pay at least approximately $3 million to Badlani and Badlani's company. (*See* PSR ¶ 14). Most of these funds were deposited into a bank account held by the defendant's brother in the name of Badlani. (*Id.*). However, when the bank closed that account around January 2015, the defendant assisted his brother in keeping the fraudulent scheme going. (*Id.*). Specifically, on March 10, 2015, the defendant flew from Toronto to New York City. (PSR ¶ 15). After arriving in New York, the defendant travelled to Stamford, Connecticut the same day to meet with his brother. (*Id.*). On March 12, 2015, the defendant emailed another individual, requesting that the individual use that individual's "Address/email/phone number/etc." in registering a company in Canada in the name of "CLB Associates." (*Id.*). The same day, the defendant met his brother again in Stamford, Connecticut. (*Id.*). The following day, March 13, 2015, the defendant flew back to Toronto from New York City, registered a "legal and software consulting" company in Canada in the name of "CBL Associates," and added the name "CBL Associates" to a bank account he already controlled in Canada (the "Bank Account"). (PSR ¶¶ 14-15).

On or about March 14, 2015, a $400,000 check issued by the Victim Company to "CBL Associates" was deposited into the Bank Account. (PSR ¶ 15). On or about April 7, 2015, the defendant wired $360,000 to a bank account controlled by his brother. (*Id.*). Thereafter, three other checks were deposited into the Bank Account, including a check for $70,000 dated July 23, 2015, a check for $60,000 dated August 9, 2018, and a check for $30,000 dated September 13, 2018. (*Id.*). As with the first check for $400,000, the defendant wired payments back to his brother after the third and fourth checks. (*Id.*)

During the scheme, the defendant repeatedly corresponded with his bank and his brother to accomplish the above-described payments. (PSR ¶ 15). For example, prior to the August 9, 2018, check referred to above, the defendant lied to his bank in an email that the Victim Company was his "Customer." (*Id.*). In other messages, the defendant asked his brother for a greater share of the fraud proceeds, noting that he "could use the flow" and inquiring of his brother "Can u leave anything more?" (*Id.*).

---

[2] The Victim Company and its employees were unaware that the defendant had an uncle named Chandru Badlani.

The defendant's brother, with the defendant's assistance, also stole approximately $3.5 million that he claimed related to a tax liability of the Victim Company. (PSR ¶¶ 16-17). In particular, in May 2015, the defendant's brother caused the Victim Company to issue a $3.5 million check to the Victim Company for the purported tax liability. (PSR ¶ 16). The defendant's brother deposited the check, which he signed on behalf of the Victim Company, into an unauthorized bank account that he opened in the name of the Victim Company. (PSR ¶ 17). Thereafter, the defendant's brother transferred the stolen money to other bank accounts controlled by the defendant and his brother. (PSR ¶ 17). Specifically, on August 24, 2015, the defendant's brother transferred $300,000 from the unauthorized bank account in the name of the Victim Company to the Bank Account. (*Id.*). The next day, approximately $274,990 was wired from the Bank Account to an account controlled by the defendant's brother. (*Id.*).

Around the time that the defendant's brother was removed as CEO of the Victim Company, the defendant's brother instructed the defendant to "cover bases in Canada." (PSR ¶ 18). Thereafter, the defendant removed the name "CBL Associates" from the Bank Account. (*Id.*).

Of the $860,000 stolen from the Victim Company with the defendant's assistance, the defendant kept approximately $150,000 and laundered the remaining $710,000 back to his brother. (PSR ¶ 21).

### 2. Procedural History

On April 11, 2022, a grand jury sitting in this District returned an indictment that charged the defendant with one count of wire fraud conspiracy, in violation of Title 18, United States Code, Section 1349 (ECF No. 1), based on the fraudulent scheme described above. The defendant was arrested on April 13, 2022, and presented before Magistrate Judge Ona T. Wang the same day. On December 29, 2022, a grand jury sitting in this District returned a superseding indictment that charged the defendant with one count of wire fraud conspiracy, in violation of Title 18, United States Code, Section 1349 (Count One), and one count of conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count Two), again based on the conduct described above. On February 14, 2023, a jury returned a guilty verdict on both counts in the superseding indictment.

### 3. The Guidelines Range

The Guidelines range is 57 to 71 months' imprisonment, based on a total offense level of 25 and a criminal history category of I.[3] To calculate the total offense level, Counts One and Two of the superseding indictment are grouped together pursuant to U.S.S.G. § 3D1.2(c), and U.S.S.G. § 2S1.1 is applied because it produces the higher offense level between the two Counts. Pursuant to US.S.G. §§ 2S1.1(a)(1) and 2B1.1, the base offense level is seven because the statutory maximum for a violation of 18 U.S.C. § 1343 is 20 years' imprisonment. Pursuant to U.S.S.G.§ 2B1.1(b)(1)(H), because the defendant is being held responsible for $860,000 in loss,

---

[3] The PSR calculates a total offense level of 23, instead of 25, because it applies a two-level minor role reduction pursuant to U.S.S.G. § 3B1.2(b). (PSR ¶ 32). For the reasons stated in the PSR, the Government opposes the application of this two-level reduction. (PSR at 28).

14 levels are added. Pursuant to U.S.S.G. § 2B1.1(b)(10), two levels are added because the offense involved sophisticated means, including multiple companies and fraudulent paperwork.[4] Pursuant to U.S.S.G. § 2S1.1(b)(2)(B), two levels are added because the defendant was convicted under 18 U.S.C. § 1956. Accordingly, the total offense level is 25.

Consistent with the PSR, the Government is not aware of any past criminal convictions on the defendant's part, resulting in a criminal history score of zero and a criminal history category of I. (PSR ¶¶ 40-41).

With a total offense level of 25 and a criminal history category of I, the Guidelines range is 57 to 71 months' imprisonment.

**B.    Discussion**

    **1.    Applicable Law**

The Guidelines still provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). The Guidelines range is thus "the lodestar" that "'anchor[s]'" the district court's discretion. *Molina-Martinez v. United States*, 578 U.S. 189, 198-200 (2016) (quoting *Peugh v. United States*, 569 U.S. 530, 549 (2013)).

After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (2) the four legitimate purposes of sentencing, as set forth below, *see id.* § 3553(a)(2); (3) "the kinds of sentences available," *id.* § 3553(a)(3); (4) the Guidelines range itself, *see id.* § 3553(a)(4); (5) any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); (6) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (7) "the need to provide restitution to any victims," *id.* § 3553(a)(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)    to afford adequate deterrence to criminal conduct;
    (C)    to protect the public from further crimes of the defendant; and

---

[4] The Government believes this two-level increase also applies because a substantial part of the fraudulent scheme was committed from outside the United States, while the defendant was in Canada. *See* U.S.S.G. § 2B1.1(b)(10).

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). To the extent that a district court imposes a sentence outside the range recommended by the Guidelines, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) (quoting *Gall*, 552 U.S. at 50) (internal quotation marks omitted).

### 2. A Sentence of Not Less Than 30 Months' Imprisonment Is Appropriate

The Government respectfully submits that a sentence of not less than 30 months' imprisonment would be just. In particular, such a sentence is called for by the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to promote respect for the law, provide adequate punishment, and provide deterrence; and the need to avoid unwarranted sentencing disparities.

*First*, the defendant's conduct was serious. His crimes lasted years, facilitated the theft of hundreds of thousands of dollars, used sophisticated means, and crossed international borders. In particular, the defendant, took calculated steps to aid in the fleecing of the Victim Company. He met with his brother to learn the name of the entity that was to receive the proceeds from the fraud and added it to a bank account in Canada that the defendant already controlled. He checked in with his brother throughout the fraud and took steps with him to attempt to avoid detection. The defendant's actions in carrying out the fraud were not a one-time mistake or a fleeting lapse in judgment—he took a carefully and deftly executed role in a sustained and sophisticated looting that involved years of deceit. Furthermore, the defendant's conduct has caused financial harm, significant disruption, and serious reputational risk to the Victim Company.

*Second*, the sentence requested herein is necessary to reflect the history and characteristics of the defendant, promote respect for the law, and provide adequate punishment. Unlike many defendants who appear before this Court, the defendant enjoyed significant financial stability and comfort as a well-educated, intelligent, and successful professional. The defendant has had a varied and successful career across multiple industries, including finance. (PSR ¶¶ 74-81). Despite his success and financial security, the defendant chose to use his skills to engage in a sophisticated fraud. In his interview with the Probation Office, he stated he "succumbed to the opportunity of earning thousands of dollars with minimal effort." (PSR ¶ 25). In fact, the defendant helped steal hundreds of thousands of dollars and kept more than one hundred thousand dollars for himself.

*Third*, the need for general deterrence is acute in this case. One of the paramount factors that the Court must consider in imposing sentence under Section 3553(a) is the need for the sentence to "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation marks and brackets omitted). "Defendants in white collar crimes often calculate the financial gain and risk

of loss, and white collar crime therefore can be affected and reduced with serious punishment." *Id*. This Court's sentence of the defendant should send a strong and clear message to others that sophisticated frauds, particularly ones as long-lasting as the fraud in this case, will be met with serious consequences.

*Fourth,* the sentence requested herein would avoid unwarranted sentencing disparities and properly account for the existence of mitigating factors. While the defendant was an integral participant in the fraud, the defendant's brother and co-conspirator, who was sentenced by the Court to 42 months' imprisonment, was the leader and primary beneficiary of the fraud. As CEO, the brother exploited a position of trust, and his theft from the Victim Company far exceeded the $860,000 the defendant helped steal. Accordingly, a sentence below 42 months is appropriate in this case.

In addition, there are other factors that warrant a below-Guidelines sentence. Foremost, the defendant lacks any criminal history. As far as the Government is aware, his conduct until his participation in this sophisticated, multinational fraud was law-abiding, and he has supported his family, including his mother during her illness. In addition, the Guidelines range in this case is largely determined by the $860,000 loss amount. However, the defendant kept only $150,000 of that amount for himself, passing the rest on to his brother. Although the defendant should be held responsible for the full loss amount of $860,000—indeed, the defendant facilitated transfer of that amount into his bank account—this was not a case where the defendant was the ringleader or organizer of the fraud. Notwithstanding these mitigating considerations, the Government believes that period of incarceration of not less than 30 months, which amounts to a significant discount from the applicable Guidelines range, is just.

**C.     Conclusion**

For at least three years, the defendant helped his brother defraud his brother's employer. He used his skills to steal and launder hundreds of thousands of dollars. On these facts, the Government respectfully submits that a sentence of not less than 30 months' imprisonment would adequately reflect the seriousness of the defendant's conduct, provide just punishment, promote respect for the law, avoid unwarranted sentencing disparities, and send a message to would-be fraudsters that a substantial jail term is the consequence of such harmful criminal actions.

                                                           Respectfully submitted,

                                                           DAMIAN WILLIAMS
                                                           United States Attorney

By:

                                                           _____/s/_____
                                                           Timothy V. Capozzi
                                                            Steven J. Kochevar
                                                           Assistant United States Attorneys
                                                           (212) 637-2404/2262

cc:     Martin Kaplan, Esq.; Kari Parks, Esq. (by ECF)