**MANDATE**

22-cr-0215-2(JSR)

23-6520-cr
*United States v. Munshani*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of October, two thousand twenty-four.

PRESENT:
    JOSEPH F. BIANCO,
    STEVEN J. MENASHI,
    EUNICE C. LEE,
        *Circuit Judges*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 05, 2024

---

UNITED STATES OF AMERICA,

    *Appellee*,

v.

SUNI MUNSHANI, a/k/a Sealed Defendant 1,

    *Defendant*,

SURESH MUNSHANI, a/k/a Sealed Defendant 2,

    *Defendant-Appellant*.

23-6520-cr

---

FOR APPELLEE:    STEVEN J. KOCHEVAR, Assistant United States Attorney (Timothy V. Capozzi and Stephen J. Ritchin, Assistant United States Attorneys, *on the brief*), *for* Damian Williams, United States

MANDATE ISSUED ON 12/05/2024

|  |  |
|---|---|
|  | Attorney for the Southern District of New York, New York, New York. |
| FOR DEFENDANT-APPELLANT: | JUSTIN S. WEDDLE (Brian Witthuhn, *on the brief*), Weddle Law PLLC, New York, New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment, entered on May 15, 2023, is **AFFIRMED**.

Defendant-Appellant Suresh Munshani ("Munshani") appeals from the district court's judgment of conviction entered after a jury trial in which he was found guilty of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The convictions relate to Munshani's alleged participation in a conspiracy led by his brother, Suni Munshani, to defraud a data security company (the "Victim") and launder the proceeds of that fraud. Munshani was sentenced principally to a term of nine months' imprisonment, followed by one year of supervised release. On appeal, Munshani challenges his convictions, arguing that: (1) the evidence adduced at trial was insufficient to prove the charged conspiracies beyond a reasonable doubt; (2) the district court erred in not allowing Munshani to admit into evidence the portion of his brother's allocution during his guilty plea proceeding where he made no mention of Munshani's involvement in the conspiracy; (3) the district court erred in refusing to give a multiple-conspiracy instruction to the jury; (4) the money laundering charge presented an improper "merger" with the wire fraud charge; and (5) the prosecutor's comments in rebuttal summation deprived him of a fair trial. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

I.      Sufficiency of the Evidence

We review a sufficiency of the evidence challenge *de novo*. *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015). In reviewing a sufficiency of the evidence challenge, we will "sustain the jury's verdict if, crediting every inference that could have been drawn in the government's favor and viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Raniere*, 55 F.4th 354, 364 (2d Cir. 2022) (internal quotation marks and citation omitted). The "high degree of deference [this Court] afford[s] to a jury verdict is especially important when reviewing a conviction of conspiracy . . . because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel." *United States v. Landesman*, 17 F.4th 298, 320 (2d Cir. 2021) (internal quotation marks and citations omitted).

We conclude that the trial evidence was sufficient to establish that Munshani participated in a conspiracy with his brother to defraud the Victim through a series of financial transactions in 2015 and 2018, from which Munshani kept $150,000 in stolen funds for himself, and transferred approximately $710,000 in stolen funds from his bank account to his brother's account to conceal the funds' criminal origins. To the extent Munshani argues that there was insufficient evidence from which a jury could rationally find that he had the requisite *mens rea*, we disagree. "As with the other elements of a conspiracy, a defendant's knowledge of the conspiracy and his participation in it with criminal intent may be established through circumstantial evidence." *United States v. Atilla,* 966 F.3d 118, 128 (2d Cir. 2020) (internal quotation marks and citation omitted). Here, the circumstantial evidence allowed the jury to reasonably infer that Munshani knew that the funds from the Victim, for whom Munshani had never worked, were obtained by fraud, and that he

3

knowingly agreed to help his brother steal, and then launder, those funds. That evidence included emails, travel records, cell phone location data, and text messages, which demonstrated, *inter alia*, that Munshani: (1) traveled to Stamford, Connecticut from Canada to meet with his brother near the Victim's headquarters; (2) instructed another person to use their email, phone number, and address to register a fake company used to defraud the Victim; (3) added the fake company's name to a bank account that Munshani controlled; (4) deposited a $400,000 check issued by the Victim to the fake company, wiring $360,000 of it to his brother's personal bank account and keeping $40,000 for himself despite doing no work for the victim; (5) received additional checks obtained by fraud from the Victim, totaling $160,000; (6) lied to his bank by stating that the Victim was his customer; and (7) was warned by his brother to "be private about [his] business." App'x at 118. Although Munshani suggests that "the evidence did not rule out [his brother] actively deceiving [him] in order to induce his actions, just as [the brother] actively deceived the accomplished (and innocent) professionals at [the Victim company] for years," Appellant's Br. at 23, "[t]he possibility that inferences consistent with innocence as well as with guilt might be drawn from circumstantial evidence is of no matter to sufficiency analysis because it is the task of the jury, not the court, to choose among competing inferences," *United States v. MacPherson*, 424 F.3d 183, 190 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also Landesman*, 17 F.4th at 319 ("[T]he Government need not negate every theory of innocence." (internal quotation marks and citation omitted)).

Munshani's related contention, that the government failed to prove that his participation in the transactions in 2015 and 2018 were part of the same conspiracy, is similarly unavailing. As we have emphasized, "[w]here there is sufficient proof of an ongoing connection between transactions, one conspiracy is not transformed into multiple conspiracies simply because it occurs

4

in more than one stage and at different times." *United States v. Vazquez*, 113 F.3d 383, 387 (2d Cir. 1997). Here, there was sufficient evidence adduced during trial for the jury to rationally find that the transactions in 2015 and 2018, through which Munshani and his brother executed the fraudulent scheme, were part of the same conspiracy because, *inter alia*, the conduct involved the same co-conspirators, victim, bank accounts, and methods. In particular, the methods—involving bank accounts and fake companies—established and utilized to fraudulently obtain the Victim's money in 2015 and then launder the fraud proceeds were designed to be used for multiple transactions and, after utilizing those methods in 2015 to defraud the Victim, Munshani and his brother used those same methods to defraud the same Victim again in 2018. *See United States v. Rucker*, 586 F.2d 899, 906 (2d Cir. 1978) ("Every act in furtherance of the conspiracy is regarded in law as a renewal or continuance of the unlawful agreement, and the conspiracy continues so long as overt acts in furtherance of its purpose are done."). The mere fact that there was a lapse in time between some of the transactions does not undermine the jury's ability to rationally find that all of the transactions were part of the same conspiracy.[1] *See United States v. Williams*, 205 F.3d 23, 33 (2d Cir. 2000) ("A single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis in its locale of operations." (alteration adopted) (internal quotation marks and citation omitted)).

In sum, the evidence was sufficient to support his convictions for conspiring to commit wire fraud and money laundering.

---

[1] Contrary to Munshani's suggestion, the evidence was also sufficient to show, as alleged in the indictment, that the conspiracy existed prior to his initial involvement in March 2015, and involved another co-conspirator working with Munshani's brother to defraud the Victim. In any event, the purported lack of any such evidence for this earlier timeframe would not impact the sufficiency of the evidence as to his participation in the charged conspiracy, nor would it constitute a constructive amendment to the indictment.

## II. The Brother's Plea Allocution

Munshani argues that the district court erred in denying his request to admit portions of his brother's plea allocution, which Munshani asserts exculpated him because his brother did not mention Munshani's participation in the conspiracy during the allocution. In particular, Munshani argues that his brother's statement was admissible as a statement against penal interest, pursuant to Federal Rule of Evidence 804(b)(3). "We review evidentiary rulings for abuse of discretion and will reverse only if there is manifest error that is harmful and affects substantial rights." *United States v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017).

Even assuming that the district court should have admitted these statements, the error would not have prejudiced Munshani. The jury had already heard evidence that Munshani's brother participated in multiple schemes to defraud the Victim. In the allocution, his brother stated that he "agreed with others" to defraud the Victim, so his identification of one co-conspirator in one conspiracy did not imply that he did not conspire with Munshani in the charged conspiracy. App'x at 16. Given the evidence supporting Munshani's participation in the charged scheme, his brother's statement identifying one other co-conspirator would not have exculpated Munshani or otherwise altered the weight of the evidence before the jury.

## III. Multiple Conspiracy Instruction

Munshani argues that the district court erred by refusing to give the jury a "multiple conspiracy" instruction. We disagree.

This Court will reverse a conviction based upon an erroneous jury trial instruction "if all of the instructions, taken as a whole, caused a defendant prejudice." *United States v. Gershman*, 31 F.4th 80, 99 (2d Cir. 2022) (internal quotation marks and citation omitted). When the defendant's objection is that the "district court decline[d] to deliver a requested instruction," the

6

conviction will only be overturned if the defendant can show that the "requested instruction is legally correct, represents a theory of defense with basis in the record that would lead to acquittal, and the theory is not effectively presented elsewhere in the charge." *United States v. Kukushkin*, 61 F.4th 327, 332 (2d Cir. 2023) (alteration adopted) (internal quotation marks and citation omitted). To achieve a reversal due to the district court's failure to give a multiple conspiracy charge, a defendant must show "both that there was evidence of separate networks operating independently of each other and that [the defendant] suffered substantial prejudice resulting from the failure to give the requested charge." *United States v. Cusimano*, 123 F.3d 83, 89 (2d Cir. 1997) (citation omitted).

Here, as discussed above, there was substantial evidence in the record regarding the existence of a single conspiracy involving Munshani and his brother from 2015 to 2018, and the mere lapse of time between transactions was an insufficient basis to warrant a multiple conspiracy instruction. *See United States v. Dawkins*, 999 F.3d 767, 797 (2d Cir. 2021) (explaining that a multiple conspiracy instruction "is not warranted when the evidence shows that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal" (internal quotation marks and citation omitted)); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) (holding that defendant was not entitled to a multiple conspiracy charge "merely by virtue of the fact that [the conspiracy] may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance"). In any event, even assuming *arguendo* that Munshani was entitled to a multiple conspiracy instruction, he has not established a substantial prejudice from the instruction's omission, especially because the trial involved only one defendant. *See United States v. Sir Kue Chin*, 534 F.2d 1032, 1035 (2d Cir. 1976) ("Even if two conspiracies had been proved, both conspiracies

7

could properly have been joined in the same indictment, since there was only one defendant . . . . [The] Defendant thus could in no event have been prejudiced by the failure of the indictment to charge two conspiracies rather than one.").

Accordingly, there is no basis to disturb the convictions based on the failure to give a multiple conspiracy instruction.[2]

### IV.   "Merger" Challenge to Money Laundering Conviction

Munshani argues that the money laundering conspiracy conviction must be reversed because it is based on the same transfers that are intrinsic to the wire fraud conspiracy charge, and thus suffers from the "merger" problem identified by the Supreme Court in *United States v. Santos*, 553 U.S. 507 (2008). *See United States v. Gushlak*, 495 F. App'x 132, 134 (2d Cir. 2012) (summary order) (explaining that a merger problem arises under *Santos* where "the money laundering count essentially duplicates another charged offense"). We review *de novo* a merger challenge to a money laundering conviction. *United States v. Quinones*, 635 F.3d 590, 597 (2d Cir. 2011). As set forth below, we find Munshani's merger challenge under *Santos* to be unpersuasive.[3]

The evidence at trial established that Munshani received the proceeds of a completed wire transfer from the Victim before participating in a second set of transactions that distributed the

---

[2] We similarly reject any suggestion by Munshani that the district court did not instruct the jury "that the prosecution must prove not only the elements of conspiracy, but also that the conspiracy *was the conspiracy charged* in the indictment, rather than different uncharged conspiracies." Appellant's Br. at 46; *see* Trial Tr. at 632 (instructing the jury that the government must prove, beyond a reasonable doubt, "the existence of the *charged conspiracy*" (emphasis added)); *id*. at 634 (reminding the jury that it was sufficient to find "that the *charged conspiracy* existed" (emphasis added)).

[3] As a threshold matter, the government argues that "Munshani's money laundering conviction presents no merger issue because after *Santos* was decided Congress amended the money laundering statute to eliminate the possibility of the merger issue raised by Munshani." Appellee's Br. at 45. Munshani counters that the "2009 amendment to the money laundering statute to include 'gross receipts' in the definition of 'proceeds' did nothing to eliminate the merger problem at issue in *Santos* and here." Appellant's Br. at 57. However, we need not address this threshold argument because we conclude that, regardless of the 2009 amendment, Munshani's merger claim under *Santos* fails based on the evidence in this case.

remaining fraud proceeds, minus his cut, to his brother. Based upon that evidence, Munshani participated in a money laundering conspiracy, separate from the wire fraud conspiracy, because he "(1) acquire[d] the proceeds of a specified unlawful activity, and then (2) engage[d] in a financial transaction with those proceeds." *United States v. Napoli*, 54 F.3d 63, 67 (2d Cir. 1995), *abrogated on other grounds by United States v. Genao*, 343 F.3d 578, 584 (2d Cir. 2003). In other words, the Victim's funds became "proceeds" under the first prong of *Napoli* when Munshani received such funds in his Canadian bank account via a wire transfer from the Victim because they were "derived from an already completed offense, or a *completed phase* of an ongoing offense." *United States v. Szur*, 289 F.3d 200, 214 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also id*. (explaining that "the funds comprised 'proceeds' at the moment they were in control of the perpetrators, and that moment occurred as soon as [one perpetrator] received them" (internal quotation marks and citation omitted)). Munshani then engaged in a separate financial transaction under the second prong of *Napoli* when he then transferred the tainted fraud proceeds, less his cut, to his brother. In short, the district court properly determined that this evidence was sufficient to support a separate money laundering conspiracy charge under *Santos*.

V.     **Rebuttal Summation**

Lastly, Munshani argues that the prosecutor's rebuttal summation deprived him of a fair trial because the prosecutor (1) misrepresented the facts, (2) shifted the burden of proof, and (3) implicitly commented on the defendant's decision not to testify.

"[A] defendant who seeks to overturn his conviction based on alleged prosecutorial misconduct in summation bears a heavy burden." *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (internal quotation marks and citation omitted). "Inappropriate prosecutorial comments, standing alone, [do] not justify . . . revers[ing] a criminal conviction obtained in an

otherwise fair proceeding." *United States v. Thomas*, 377 F.3d 232, 244 (2d Cir. 2004) (citation omitted). The defendant must show both that the "comment was improper" and "that the comment, when viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him, depriving him of a fair trial." *Farhane*, 634 F.3d at 167 (internal quotation marks and citations omitted). Three factors are used to "assess the degree of prejudice": (1) "the severity of the misconduct;" (2) "the measures adopted to cure the misconduct;" and (3) "the certainty of conviction absent the improper statements." *United States v. Russo*, 74 F.3d 1383, 1396 (2d Cir. 1996) (citation omitted). As Munshani failed to object to these alleged errors during trial, we apply the plain error standard and will reverse only if the remarks amounted to "flagrant abuse which seriously affects the fairness, integrity, or public reputation of judicial proceedings, and causes substantial prejudice to the defendant." *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012) (internal quotation marks and citation omitted).

We find no basis to conclude that any of the statements at issue in the prosecutor's rebuttal summation were improper. For example, Munshani contends that the government "made a false argument . . . that [Munshani] had guiltily altered his entity bank account." Appellant's Br. at 59. However, "[t]he Government has broad latitude in the inferences it may reasonably suggest to the jury during summation." *United States v. Coplan*, 703 F.3d 46, 87 (2d Cir. 2012) (internal quotation marks and citation omitted). Thus, as the district court observed on this claim in denying Munshani's application for bail pending appeal, "[w]hen read in context, this argument [by the prosecutor] was based on evidence that was already in the record, was fairly encompassed within the Government's argument on closing that defendant and his brother had a text conversation about needing to close an account in Canada (i.e., the TD Bank account), and was responsive to the

10

defense's argument . . . that the TD Bank Account was not closed." Addendum at 13 (citations omitted).

There is similarly no support in the record for Munshani's assertion that the prosecutor improperly shifted the burden to him and "implicitly commented on [his] decision not to testify." Appellant's Br. at 57. It is well settled that the government "may comment on the failure of defendant to refute government evidence or to support his own claims, so long as its remarks could not be construed as a comment on the defendant's failure to testify or as a suggestion that the defendant has any burden to produce evidence." *United States v. Rosa*, 11 F.3d 315, 342 (2d Cir. 1993). As the district court noted, the prosecutor's "[c]omment[s] on a lack of evidence that [the brother] deceived defendant or stating that it was unbelievable that defendant was fooled [by his brother] did not shift any burden to defendant; rather, read in context, these are simply permissible comments on the part of the prosecutor to highlight the weakness of defendant's position." Addendum at 14. Nor did the comment in rebuttal, that the jury should not take the lawyer's word that the defendant was deceived by his brother, implicitly comment on Munshani's failure to testify. Indeed, the prosecutor explicitly told the jury during the rebuttal summation that Munshani had no burden to do anything. Instead, construed in context, the prosecutor's comment was a permissible argument to the jury—namely, that defense counsel's assertion in summation, that Munshani was duped by his brother, lacked support in the record.

In any event, even if improper, these remarks would not constitute a "flagrant abuse" that caused substantial prejudice warranting a new trial. *Williams*, 690 F.3d at 75.

11

\*     \*     \*

We have considered Munshani's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit